Good morning, your honors. Howard Anderson on behalf of Ms. Johnson. As you know, Officer Quattlebaum hauled my client away from a family cookout in handcuffs because, according to him, quote, she used a word that in my opinion and in society is looked down upon as profane language and as a curse word. Close quote. At the same time that he was playing language police, he was also a defendant in a lawsuit that Ms. Johnson had filed against him for using excessive force when he came on her house as he was executing a warrant at the wrong property. And so I think that may bear in some reason as to why he chose to arrest Ms. Johnson on this charge. But in any event, we're here today to ask you to find that South Carolina Code 1617-530B is unconstitutional, either on overbreadth grounds, on vagueness grounds, or both. And as your honors know, that because this is a statute that purports to criminalize pure speech, the operative test is we have to look at the statute as though, quote, it read precisely as the highest court of the state has interpreted it, as the Cole under case from the Supreme Court. And based on the party's research, it appears that the South Carolina Supreme Court has addressed this statute a total of three times. The first time is in the Roper case, which we talk about in the briefs, and the other two times are in the notice of supplemental authority that I filed, which is when the South Carolina Supreme Court addressed the case under a prior codification of the statute, and that's the Hannibal case and the Gist case. And so we have two issues, overbreadth and vagueness, and I'm happy to talk about either. I guess I'll address overbreadth briefly, unless your honors would prefer to go straight to vagueness. Because it's a pure speech case, the statute is unconstitutional, unless it has been definitively construed as criminalizing only unprotected speech. So the burden is on the state here to prove that the statute, as a matter of statutory interpretation, does not purport to reach constitutionally protected conduct. And as you know, subsection B, which is what we're talking about, criminalizes both obscene and profane speech. And so really the issue that the parties have is, because obscenity is a term of art, so we're really just talking about what is profanity, and the issue is has South Carolina definitively construed profanity to only encompass profanity that is also fighting words under the Supreme Court's definition. And again, I'll be brief here, because I think it's pretty well laid out in the brief, that I don't think the South Carolina Supreme Court has ever said that. It's had three chances when it could have said that, and it never did. What about the language in Surratt, right at the beginning of page 478, where the court says, and I agree with you, it's not an unambiguous statement with reference to the statute, but the court is saying the fact that words are vulgar or offensive is not alone sufficient to classify them as fighting words, thereby removing them from the protection provided by the First Amendment. It seems to me that the court is saying the only way they can be protected under the First Amendment, or excuse me, cannot be protected, is if they're fighting words. Is the court saying that in Surratt, or is it drawing too much of a gloss from the language presented? I think that's the closest the court gets to saying that the only fighting words will survive a First Amendment challenge. Well, the problem with Surratt is that it's not a decision from the South Carolina Supreme Court. It's from the Intermediate Court. No, it doesn't. I mean, we can look to decisions of the Intermediate Court of Appeals if the Supreme Court hasn't spoken directly to it. Right. So as Your Honor knows, because the South Carolina Supreme Court is the ultimate arbiter as to what South Carolina law says, the Intermediate Court's opinions are sort of guideposts as to what you think the Supreme Court would say. But I would note that the South Carolina Supreme Court in Roper, for example, said that it's okay to arrest somebody who's merely shouting profanities at the police. And so, again, I think Surratt is inconsistent with Roper. And, of course, the constitutional problem is you shouldn't be arrested based off of what you say, even if you're ultimately acquitted at trial. And even more. Well, but Roper was a different situation, wasn't it? Because it did involve shouting them at the police, shouting the words. And the issue of fighting words is whether they tend to incite violence. And don't the cases break differently generally on the issue of fighting words uttered to a police officer? Sure. It is very difficult to have fighting words uttered to a police officer. But here, Officer Quattlebaum said that she uttered those words to him. And so we're talking about a case where he arrested her for words that she said to him. And so, again, it's just hard to see how that could be fighting words. But even more problematic in terms of South Carolina Supreme Court jurisprudence is the Georgetown case, which admitted Was she saying it to Quattlebaum? Maybe I'm confused. I thought she was just getting out of her vehicle making this statement generally. What he said in his interrogatory answers, which were filed below as part of a separate motion for summary judgment, is he said that she said it to me as she was getting out of the car. But wasn't the evidence in the case that she – that's his construction. Correct. That's his subjective perception of what was going on. But the evidence in the case, I thought, was that she was parked in her vehicle and got out of her vehicle and uttered those words. Well, that's what he says, right, at the criminal trial. But in his discovery answers in this case, he says, as she got out of the car, she told them to me. Well, again, that's his perception that she was telling him rather than just uttering the statement. Right. Well, again, I think it's relevant that he arrested her based off of words that she thought she was saying to him, given that it's very difficult to have fighting words uttered to a police officer. But in terms of South Carolina Supreme Court jurisprudence, the big problem, too, is the Georgetown case. Scurry? Sorry? Scurry? Georgetown v. Scurry, yes. And so that was – It involved a different statute. Right. But the municipal ordinance there criminalized profanity. And the key thing there is that the Supreme Court, in construing that ordinance, said, quote, it was too favorable to the defendant to charge that such language would not justify an arrest unless it was calculated to bring on a fight. Close quote. It didn't even – it didn't reach first – it didn't mention the First Amendment or, indeed, any constitutional – potential constitutional infirmity, though, did it? But there it said that it doesn't have to be fighting words to violate the statute because – Well, they're talking about disorderly conduct statute, though, in that case. Right. So it was a municipal ordinance that outlawed profanity, which is similar to what we have here, but it's a state statute in our case. And so there the – there our Supreme Court said profanity is not the same thing as fighting words. Profanity means invoking the name of the divine, and the trial court below got it wrong when it told the jury that it had to be words that were designed to provoke a fight. And so, again, that is relevant to what this statute means because we're – both statutes talk about profanity. And here I would just note – – focused on fighting words. In Scurry, it seems to me that it cuts against you somewhat in that it says profanity is different. Profanity – I think it was language irreverent toward God or holy things. It is a different kettle of fish. I agree that it's not dispositive here. My only point was there in Scurry that our Supreme Court said we don't care about fighting words when we're talking about profanity. And so that was what it said that the error below was from the recorder's court. But here I'll note that while the defendants are saying, hey, this statute only criminalizes fighting words on the one hand, they're also saying that the criminal judge got it wrong when he threw out her conviction. And to me, as I look at the transcript, it's not even arguable that the evidence presented at the criminal trial, it didn't come anywhere close to establishing fighting words. And so they are simultaneously saying our statute only criminalizes fighting words, but then the Attorney General says, but the trial court got it wrong when it threw out her conviction. So, again, I think that's a bit of a problem. But moving on to the vagueness part of it, we sort of have two parts of vagueness. One is, does it give the police too much discretion? And then, two, does it give fair notice to the public? And as the Supreme Court said, what we're most concerned about is, does the police have too much discretion? That's at least the current focus of the court. And so what we're trying to figure out for profanity is of all the fighting words that exist in the universe, which ones are profane? Because only profane fighting words, if you find the statute only applies to fighting words, only profane or obscene fighting words would violate the statute. But, Mr. Anderson, you're alleging facial unconstitutionality. Yes, Your Honor. And that's a tough argument. The problem, it seems to me, that you have is that we presume state statutes to be constitutional, and if they are susceptible of a constitutional gloss, then it's hard to argue that it's unconstitutional on its face, isn't it? I admit that facial challenges are usually an uphill battle, but I will say that it's considerably easier in the context of statutes that criminalize pure speech because the burden is on the state to show that it has already been authoritatively construed. Do you agree that your vagueness argument is a lot weaker than your overbreadth argument? No, Your Honor. When it comes to profanity, because only profane fighting words can arguably be criminalized, and I don't know what the police have far too much discretion to decide what is profane, right? So if you look at Justice Frankfurter's concurrence in the Burstein case where he says, you know, it's impossible to know what's sacrilegious, and if we don't know, how can anybody else know? And so, you know, we're in a very pluralistic society, and we have sort of lots of religious tolerance, which is great, but that means we have a lot more of sort of deities and sort of things that might be holy, and I think that the state could make this statute a lot cleaner. So this is not a case where there's nothing more that the state could do. I mean, here, for example, they could add a sanctor requirement so that the person has to know or intend to be profane, but here there's no purported mens rea. But for vagueness, it's got to be impermissibly vague in all aspects, isn't it? And if the police … And there certainly are some situations where it would not be. But if the police have too much discretion, they have too much discretion in every case. That's what Justice Breyer's concurrence in the Morales case says, that when we're talking about the discretion prong, it is always vague if the police have too much discretion, because they have discretion in every case. And so the fair notice prong goes to, well, you know, is there sort of a core here that everybody recognizes? But when we're talking about do the police have too much power to decide on the spot … Well, but, you know, all these kinds of minimal offenses, don't they require a broad exercise of discretion necessarily, whether it's use of profane language or drunken disorderly conduct or drunk in public? I mean, all of these low-level type offenses are necessarily very judgment-based. I mean, would you have us just wipe them all out? Well, Your Honor, given that the State can easily make the statute more defined by, for example, having us again to require … What requirement? A mens rea requirement. Okay, so given that the State could easily … And what would the mens rea requirement state? That you have to intentionally utter a profanity or you're intending to cause a disturbance of the peace. Well, those are two very different things because one would be specific intent and one would be general intent. The mere utterance of the word is a general intent. So you're saying that you have to have a specific intent requirement. And so that was what the Seventh Circuit said in the Talman case where they were construing the federal statute that outlaws profanity on the airwaves. And so there the Seventh Circuit read in as the entry requirement that you had to know or reasonably should have known that your words were illegal, right? So that it wasn't defined in advance. But here there is no case anywhere that says that there's a mens rea. But I see … Your Honor, before you sit down, you seem to be taking exception to the limitation of the statute with respect to fighting words. Do you have a problem with the limitation of fighting words? Is that problematic? Because we're obviously bound to accept that. Right. So it is not a problem under current Supreme Court case law for a state to criminalize fighting words, okay? And so the question here is does this statute limit itself to fighting words or not? If it's limited … Or if you have courts interpret it to be that it is only fighting words. Correct. Is there an authoritative construction of the statute that says that it's only fighting words? And if this Court finds that there is an authoritative construction that limits it to fighting words, then that takes care of the overbreadth problem. Because the Supreme Court is bound by what the U.S. Supreme Court says. But it also informs the vagueness issue, doesn't it? No, because we still have an entire category of fighting words, but only some fighting words are also profane fighting words. And when the state is trying … Because the state hasn't purported to criminalize all fighting words, which would take care of the vagueness problem. It's only chosen to criminalize profane fighting words. We have to decide where in this big circle of words we're talking about. And that gives police officers a lot of discretion. And given that it's easy to cut down on that discretion, there's no good reason why the state shouldn't have to do that. What about hearing distance? Again, here Officer Quattlebaum said that she was 60 yards from a church. And I find that hard to believe that's hearing distance. But here, just like in our drug statutes, you can say if you utter it within 200 feet of a school. So there are objective ways that you can make the statute less a discretionary. Or you can say you're intending to disrupt the operations of a school or a church. And so, again, there is no signature requirement. You don't even have to know that a church or a school is nearby. And so, again, the statute could be made less vague very easily. And there's no good reason why the state shouldn't have to make those small tweaks that would make the statute a lot fairer and would avoid arbitrary enforcement that results in my client being hauled away in handcuffs at a family cookout. And with that, I will offer the rest of my time for rebuttal. Thank you. Mr. Matthews? It's certainly a pleasure to be before this court. My name is Gene Matthews. I'm representing the South Carolina Attorney General. And let me start by saying we disagree with my learned colleague on the standards that we're discussing today. First, we agree with this court, as I believe it's stated, that state statutes are presumed to be constitutional, that the party challenging constitutionality bears the burden of proof, not the state, and that we agree, I believe what the court has stated, that the court should avoid constitutional problems if a reasonable reading doesn't raise constitutional issues. Now, the two issues before this court are overbreath and vagueness. We believe that Surratt does authoritatively state on behalf of the state, of the state's appellate courts, that that is restricted to fighting words. That's certainly the position of the state's Attorney General as we read the statute and that case together. That certainly to us seems to be the highest pronouncement made by a state appellate court, and we refer to Gooding and Colander as both cases which permit and redirect, you know, the courts that owe its allegiance to pay attention to and give credence to those intermediate appellate courts and their decisions. Does the fact that, and I appreciate that summary of what you believe the standards are, but does the fact that the officer in this case seemed to believe that he could arrest somebody simply for uttering profanity suggest a problem with the statute? No, Your Honor, and let me be clear, I mean the officer no ill will, but if the officer makes an error, as officers sometimes do in enforcing any statute, whether it's DUI, certainly Judge Keenan referenced low-level crimes of that type, that does by necessity require judgment on behalf of an officer, and a good example would be a DUI arrest. If you're making a roadside nystagmus test, that necessarily involves judgment by the officer. In this case, the officer made a judgment call, and it seems to me the system is working because the person who was arrested pled her case, won in front of the magistrate, and is now bringing a separate civil action against the officer, to be decided really outside the question of whether or not the statute itself is unconstitutional. I don't, this has nothing at all to do with the merits of this case, but I hope the officer is not representing himself in that civil trial as he did in the criminal case below. I believe, sir, he is happily and well represented by another colleague of mine, and I wish him well. Mr. Matthews, with regard to your reliance on Surratt, is there any particular language other than the language I cited at the beginning of page 478? Well, I think if you go toward the end of 478, when the court is discussing Perkins, without fighting words, defendants in Perkins could not have been convicted. That seems to me to be a clarion bell, that fighting words are… I'm sorry, where is that now? Yes, ma'am. I'm looking at the end of 478. The paragraph begins, in the state of Perkins, our Supreme Court concluded a conviction under 1617-330 required more than raised voices. Without fighting words, the defendants in Perkins could not have been convicted. Likewise, in the state of Fitman. Okay, but Perkins was a case where the police was, wasn't it? Maybe I'm getting them confused. Was Perkins a case where the police were on the receiving end of the propranity? I believe that's right, Your Honor. But the case would be, we think the standard would be the same, and certainly it's the position of the Attorney General that in order for a law enforcement officer to make an effective arrest under this particular statute, the words would have to be fighting words. The propranity at issue would need to be fighting words. And that, in essence, both for over-breadthness and for vagueness, both of these arguments, that is the cabining of that type of term of art that the court seeks out in cases like Cox, Louisiana, or other cases where the courts are saying we really need to focus in on how these words, which may be construed broadly, are circumscribed by both the court and by the words themselves. Do we actually have an authoritative interpretation that limits the statute here to fighting words? Obviously, Surratt is an important case for you. Surratt is the case that we rely on primarily. But the other side has pointed to a number of Supreme Court cases, some of which are a little bit stale, but I guess still a good law. Scurry, for example, admittedly does not interpret the same statute at issue here, but I think a sufficiently analogous statute in the court there made no reference at all to fighting words when defining the term profane. Your Honor, let me agree with you on a number of occasions here. First of all, it is ancient. It's over 100 years old. It does not involve the statute at issue here at all. It involves the Georgetown Ordinance. It did not necessarily involve profanity, as I understand it. It was in the language from that era, as cases are written up, the man was called a liar. And perhaps in 1912 in Georgetown County, that was profane. I don't believe it would be the case here. But the court said that what was profane was language irreverent to God or other holy things, right? Right. But later- Could you further define it? Well, the court, as the years have passed, you know, Surratt comes along and says, and Surratt, of course, would be on notice that the Court of Appeals would certainly be bound by South Carolina Supreme Court rules, was certainly on notice, at least theoretically, of Scurry, and was happy to make the ruling that in order to criminalize under this particular statute, 530B, you have to use fighting words. That would mean to me, that would mean, Scurry is interesting historically, but has, to my mind, no other relevance to this case. If it is true that in 1912 it is true that profane language is language irreverent toward God or holy things, fine. In order to make that a criminal arrest effective in 2016, under 530B, they have to be fighting words, whether you consider them certainly under this statute. And, in fact, the fact that for both over-breath and vagueness, we would argue that it is especially constitutional because there are only certain conditions where this particular statute works. And how does an officer on the street in this situation determine whether someone has uttered profane language? Well, ma'am, let me give you my – I actually teach at the Criminal Justice Academy, and I'm in part responsible for – Right. So what do you tell the officers? You're out there on the street, lots of stuff going on, people yelling things. How do you determine whether something's profane with reference? Well, the first thing we – ma'am, the first thing we teach officers is you're going to hear a lot, and you're not going to like it, and you've got to take it. So if somebody says – and forgive my language, but in this case, the officer, to my understanding, was called to the scene. He wasn't riding around the city of Saluda looking for stuff to do. He was called to the scene for domestic disturbance. He arrives. There is an exchange, and I believe the plaintiff says, again, please excuse my quotation of the record, but this is some motherfucking shit. Now, to his ears, that may have been language that – that may have been language that counted under the statute as criminal because of the alleged distance to a church or school, further limiting, by the way, when those situations can be criminal. What I would tell an officer in my criminal justice class is, when you hear that, don't make an arrest because, number one, are these fighting words? If you make the arrest, you're going to need to defend whether or not these are fighting words if you proceed under that statute. That's how we would teach officers – or let me be clear. That's how I would choose to teach officers in light of Surratt. Not this case. In light of Surratt. If you go to the way – the same way we would, frankly, again, to use the DUI example. The DUI statute is larger than our murder statute. It is a complex statute and requires not only mastery of that particular statutory scheme, but a significant amount of judgment. And you need to tell that officer and teach that officer, you're going to have to use your seasoned judgment to understand when a particular statute crosses the line or doesn't. When, for instance, does that – in that roadside test, when someone is walking backwards and forwards, are they wobbling? Are there rocks on the ground? These are things that statutes don't ordinarily contemplate. As here, you wouldn't contemplate every – and you couldn't. A general assembly couldn't. So you're saying the fact that it's rooted in fighting words, according to your interpretation of Surratt, gives the officers fair guidance. It has to be language that tends to incite a breach of the peace. Exactly. And, ma'am, to be honest, let me compliment my opponent. I believe that's exactly what occurred before the match. I believe that was part of his argument. When the – I think the magistrate himself threw out the case because he didn't find the words profane. Right. Okay. My understanding was there were many arguments made before the magistrate, and this would certainly be one of them if, let's say, an example, another arrest is made by this or another officer. I would defend, if I were doing so, I would defend the case by saying the words at issue here are not fighting words. And because of Surratt, it's not a crime. And that would be, frankly, I think, the end of that prosecution. And I think that Surratt commands that decision from a lower court. Now, to answer your question about Roper, candidly, my reading of Roper is that it does not address constitutionality at all. It's kind of a hypothetical thrown out by the court to say you've used this as a probable cause to make an arrest. Okay. Even, as my memory of Roper is, the court was saying, look, even if this is unconstitutional, the officer wouldn't have known at the time, it's almost like a qualifying immunity argument, at the time the officer would not have known that this statute was unconstitutional and, therefore, the arrest would have been okay. And I believe. It was presumptively valid. Exactly. Exactly. And, again, to address, to make sure I'm checking off my boxes, as far as the over-breath argument is concerned, there's a state case, Gemento, which we cite. There's no over-breath challenge where the statute doesn't suppress protected speech. We think the lower court got that question right when it said the state is arguing, the state is arguing that this statute only reaches fighting words. That answers the mail on that question. In terms of vagueness, again, to address, I believe Judge Diaz raised the question, how does that affect vagueness? Well, we believe a couple of things. First of all, following Gooding, following others, especially concerning state legislation. Because federal courts, and what struck me about Gooding was a statement that I rarely see. The Supreme Court said we lack jurisdiction authoritatively to construe state legislation. Breathtaking and refreshing. But that is why, I mean, that's the answer to the why question. Why does it matter so much for us to pay attention to what state and immediate courts say? Because this is a federal court's passing on state legislation's constitutionality. And as we look, then, to the other quote on that issue in terms of vagueness comes from Grainer, which is we're condemned to the use of words and we can never expect mathematical certainty from our language, which is true. In order to address the concern, I think, that Judge Duncan raised about hearing distance, the other kind of part of that, I would rely on a case like Cox v. State of Louisiana, which was construing the term near. Those are both relative to distance. And I would rely on the Supreme Court's, what we regard as good judgment, that it was not the type of the term near, while indistinct, was not the type of unbridled discretion to implicate vagueness. And that challenge, if we're speaking in terms of hearing distance, near, those types of, in my view, cabining terms, the term itself actually assists the citizen or the plaintiff by saying, there are only certain times where this could be criminal. For instance, if using this statute, the police officer marches into my living room when my college team is not doing well and I'm cursing them, and not that I do that, but I presume I do, the police officer marches in and says, you, sir, are under arrest. Well, frankly, I'm not near church. I'm not near school. I'm certainly not within hearing distance of either. So whatever else I'm guilty of, poor manners, perhaps, I'm not guilty of that. So the very thing that apparently the plaintiff speaks of in terms of this, well, is this a cause for vagueness? No. This is actually assisting in cabining what the officer could do. And, again, I rely on Cox v. State of Louisiana for that. Also, frankly, the other case I might direct your attention to is Cemento. There, there's a footnote that I'm, frankly, particularly fond of in this case. It's footnote six. And that's where the court says, moreover, and this is the Supreme Court stating, moreover, in many cases it is up to police to determine where a statutory line is drawn. For example, where the issue is obscenity, loitering, disturbing the peace, or driving under the influence. The fact that an officer must make a judgment call does not render a statute unconstitutionally vague, any more than does the fact that a determination of guilt ultimately turns on the evidence. And they were referring to another case, City v. Bain, which is cited in Cemento. Cemento was a case involving, of all things, a poker game, whether or not a house, whether the term house was too vague. And again, that's, although not related to profanity or to speech, that the court certainly has a record of stating, we do expect and we do interpret these statutes and the terms within these statutes to be limited. We're also, we keep an eye on those statutes that may be overly vague or that may invest too much discretion into the constable. However, we can't live in a world where the officer has no discretion, which is what the plaintiff appears to be arguing for. If the sweep of the statute is cabined by at least two things, number one, what is said and we believe the court has spoken. It's fighting words and nothing more. Second, where it occurs, and we're going to, there's some gray area, but it's not so gray that it's unconstitutionally vague or unconstitutionally limited. At that point, the work of the court and the General Assembly is done. And the officer is armed with that statute, as with all statutes. We train and we hope they use good judgment. They do have the protection of qualified immunity, which requires not bad guesses in gray areas, but a bright line. Although that's not really an issue here. Not an issue here at all. And let me be the first to say, again, I wish that officer well in other proceedings in this case. This case, in my understanding, the issue solely before this court is, is 530B unconstitutional? Yes, no. We would think, we would argue that the court's pronouncements in Surat, that the guidance that the U.S. Supreme Court gives us in cases like Gooding or Chaplinsky and certainly Cox as to the distance issue. The issue in Village of Hoffman Estates where, again, and Grainard also, where the courts say, look, in these cases, you know, we're not looking for reasons. We're not looking for hypotheticals by which something might not go right. If there are issues where things are just fine, they're just constitutional, they are we're just working after fighting words, the limits on even that issue work to the favor of the citizenry. We're not looking for reasons to declare state statutes unconstitutional. And in this case, because of Surat, because of the framework that the U.S. Supreme Court has laid for us in the cases that we've discussed, we think the answer is relatively clear. And I'm happy to answer any other questions you may have. Thank you. Thank you. Do you have a few minutes for rebuttal? Yes, Your Honor. And I'll try to be brief here. First, I appreciate the defendants here saying that, you know, today that they think the criminal judge got it right. But I would note at page 36 of the appendix, paragraph 13 of the answer, the answer is, quote, it is affirmatively asserted that upon information and belief, the criminal charge against the plaintiff was dismissed based on a technical error related to the interpretation of the statute. Close quote. So there the answer is saying the criminal judge got it wrong, that the evidence before the criminal judge supported a conviction, when I don't think that anybody here today in court says that her words were fighting words. And that advances your constitutionality argument. How? Because we're trying to decide for the over breadth, is it only fighting words? And given that we all agree today that the evidence in the criminal case didn't show fighting words, the answer here says. The question is whether or not the South Carolina Court of Appeals construction of the statute is applying to only to fighting words gives it a sufficiently constitutional gloss to survive a constitutionality challenge. Is that not the issue? I would disagree a little bit. And I would disagree to say that the issue is, is Surratt a good predictor of what the South Carolina Supreme Court would hold as to what profanity means? And here my only point is that here today I heard counsel say the criminal judge got it right. Those weren't fighting words. The officer screwed up. But in the answer, at the same time, the answer was the criminal judge got it wrong. Secondly, when it comes to discretion, I think that the law can tolerate a lot more discretion when it comes to things like driving too fast for conditions, right? Because that doesn't involve speech. But when it comes to speech, the law is crystal clear that we don't like the government to have discretion because then you get into content-based determinations. And so that's why when it comes to permitting, for example, you can't have any discretion by the officer. And so here, this is a case about pure speech, and so it's not a DUI case or driving too fast. And given that it is very easy to narrow the discretion, there's no reason why the Constitution should not require that to be done. Again, we could narrow it by adding a mens rea that you have to know that your words are fighting words or you reasonably should know that your words are fighting words. We could narrow it by saying you have to know or reasonably should know that you're near a school or you're within 200 feet of a school. We have to – we could narrow it by saying you have to know that your words might disrupt the operations of a school or a church. Again, those are all very easy legislative fixes that the General Assembly could do to – Well, that may help with respect to, I suppose, the prosecution of any offense, but I'm not sure how that cabins an officer's discretion. Because we're trying to figure out what is probable cause to arrest the person. And so, again, if the officer – I mean, here, the officer said, look, I thought it was a bad word. And so I decided that I want to take a jury poll. So I hauled her away in handcuffs because I wanted to do a jury poll as to whether these words were bad. That's what he said, because he said, you know, it's purely a jury question. There's no sort of objective test. It's purely a question. I thought it was a bad word, so that's why I arrested her. And, again, if the test is she had to have known that it was a bad word, then that narrows the cases in which he can lawfully make an arrest and not be subject to 1983. So he's going to inquire? He's going to ask her at the scene of the alleged offense, what were you thinking? Again, the less discretion that the officer has, the fewer times people get arrested wrongly. I just don't think as a practical matter that's going to help an officer on the street. As I said, it may help with respect to a prosecutor's decision whether or not to go forward with the case. Well, it would certainly help, for example, if we said 200 feet away from a school, right? I mean, that would be a different. That's a very clear case. But here she was arrested on a Monday afternoon at 2 o'clock, and so no one was even in the church. But, again, why she was arrested, I don't know. I would also note that striking down subsection B really doesn't harm the state in any great sense because everyone agrees that subsection A criminalizes all fighting words uttered in public. And so it would be a very narrow class of cases that could not be prosecuted under A but could only be prosecuted under B. I would note from Perkins that under subsection A, any loud and boisterous conduct, i.e. fighting words, violates subsection A. And so striking down subsection B doesn't really narrow the class. There are probably a handful of very weird cases that can only be prosecuted under B but not A. And so, again, I would say that this is a narrow request that I have here. And then when it comes to Cox, I would just note that there the officer had to give the protesters advance warning as to how far was near. And so that was a very important part of the case. And then there was a scienter requirement in the statute. And in the Gray-Ned case, which involves a protesting near, I mean, I'm sorry, adjacent to a school, quote, unquote, the Supreme Court said it was a close question. But it only survived because there was a scienter requirement that you had to willfully make noise adjacent to the school with the purpose of disrupting the operations. And so there the Supreme Court said, well, it's a close question, but we have the scienter requirement, and so that gets it over the hump. Here there is no scienter requirement. And, again, I think that's one of the big problems with this statute is that it purports to be a strict liability offense. And so the officers, you know, have this sort of wide net that they catch. And, you know, no one should have to be hauled away in handcuffs because of what they say unless it is truly unconstitutional. And I think that the Constitution requires the government to be exceptionally precise when it wants to criminalize pure speech. And that's what the statute does. And so with that, I would ask Your Honors to reverse the judgment below and say that the statute is unconstitutional on its face and to order the trial court to enjoin the defendants from enforcing it until the South Carolina courts are remitted the statute. Thank you. Thank you very much. We will come down in Greek Council and take a brief recess.
judges: Allyson K. Duncan, Barbara Milano Keenan, Albert Diaz